```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


James Thomas,                   :

          Plaintiff,            :    Case No. 2:10-cv-74

   v.                           :    JUDGE GEORGE C. SMITH
                                     Magistrate Judge Kemp
Gary R. Croft, et al.,          :

          Defendants.           :
```

REPORT AND RECOMMENDATION

Plaintiff, James Thomas, a state prisoner, filed this case under 42 U.S.C. §1983 against a number of employees of the Ohio Department of Rehabilitation and Correction. Defendants Gary Croft, Corby Free, Robin Knab, Gary Good, Tammie Smith, Jeremiah Shoemaker, and Ernie Moore have moved for summary judgment on all claims (#62). Mr. Thomas filed a memorandum in opposition, and the defendants replied. For the following reasons, the Court will recommend that the defendants' motion for summary judgment be granted.

I. Factual Background

Mr. Thomas alleges that early in the morning of Friday, November 27, 2009, he went to Mr. Shoemaker's office. Mr. Shoemaker was the food service manager at the Chillicothe Correctional Institution where Mr. Thomas was then incarcerated. Mr. Thomas was scheduled to work that evening in the kitchen. As a practicing Seventh Day Adventist, he asked Mr. Shoemaker to be relieved of this assignment so that he could observe the Sabbath which began that evening at sunset and continued until sunset the next day. Mr. Thomas had previously requested a religious accommodation through the prison chaplain, but the parties dispute whether he had taken all necessary steps to obtain the accommodation. Mr. Shoemaker tried unsuccessfully to reach the

chaplain to verify whether plaintiff had obtained a religious accommodation, but was unable to reach him.  Because Mr. Shoemaker was unable to verify to his satisfaction that plaintiff was entitled to the requested accommodation, he ordered Mr. Thomas to report to work that evening as scheduled.

The parties offer differing accounts of what happened next.  Mr. Thomas alleges that, as he left the office, Mr. Shoemaker threw his prisoner identification card at him barely missing his eyes.  The defendants contend that after Mr. Shoemaker denied plaintiff's request, Mr. Thomas became very agitated and began uttering threats and using profanity toward him.  The defendants further claim that as Mr. Thomas was leaving the office, he used such force that it appeared to them that he was trying to rip the door off its hinges.  In response, Mr. Shoemaker ordered Mr. Thomas to get against the wall, and when plaintiff refused to comply, used force to put him against the wall.  When Mr. Thomas placed his hands on the wall instead of behind his back, Mr. Shoemaker perceived that plaintiff was resisting being handcuffed and took him to the floor with assistance from Officer Good.  Mr. Shoemaker and Officer Good proceeded to handcuff Mr. Thomas who continued to resist.

A registered nurse examined Mr. Thomas on November 27, 2009, after a reported use of force.  Redness was observed under plaintiff's right shoulder, as well as swelling under his right eye.  The swelling under the eye was treated with ice.  No further treatment was required.

Mr. Shoemaker filed a conduct report against Mr. Thomas for his actions on November 27, 2009.  The conduct report charged Mr. Thomas with threatening bodily harm to another and disobedience of a direct order in violation of Rules 8 and 21.  On December 4, 2009, the Rules Infraction Board conducted a hearing on these charges.  According to the RIB record, Mr. Thomas refused to

attend the hearing and was found guilty of both charges.  Mr. Thomas appealed the decision of the RIB first to Robin Knab, the Warden at CCI, who affirmed it.  Terry Collins, then Director of ODRC, subsequently reviewed the board's decision at plaintiff's request and determined that Mr. Thomas was validly charged with the proper rules infraction; that there was substantial compliance with all applicable policies and procedures; that there was sufficient evidence to support the RIB's decision; and that the penalty imposed was authorized and proportionate to the offense.

 Mr. Thomas wrote out a three-page grievance dated both November 27, 2009, and November 30, 2009, and mailed it to Corby Free, the institutional inspector at CCI.  In his grievance, Mr. Thomas set forth his version of what occurred and asked that Mr. Shoemaker and Officer Good be severely disciplined for their actions.  The document was returned to Mr. Thomas along with a grievance form and instructions on how to complete it.  The institutional inspector's office advised Mr. Thomas that he needed to limit his complaint to the amount of space in the form.  There is nothing in the record to indicate that Mr. Thomas ever put his grievance against Mr. Shoemaker and Officer Good in the proper format.  However, on December 17, 2009, the Office of the Chief Inspector for the Ohio Department of Rehabilitation and Correction received a completed grievance form from Mr. Thomas in which he complained about the failure of Inspector Free to take corrective action against Mr. Shoemaker for filing a false conduct report.  On December 24, 2009, Gary Croft, the Chief Inspector for ODRC, denied plaintiff's grievance.  Chief Inspector Croft concluded that the issues raised by Mr. Thomas could not be pursued through the inmate grievance procedure, but should have been raised in plaintiff's appeal of the RIB's decision.

The November 27, 2009 incident also led to a use of force investigation at CCI.  On December 16, 2009, the Use of Force Committee found that force used by Mr. Shoemaker and Officer Good against Mr. Thomas was justified and was neither inappropriate nor excessive.  The warden concurred with the committee's findings and determined that no disciplinary actions against the staff members should be initiated.

## II. Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and that the moving party is entitled to judgment as a matter of law.  Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material evidence of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett,  477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believe demonstrate the absence of a genuine

-4-

issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. With these standards in mind, the Court will decide the instant motion.

### III. Analysis

#### A. Plaintiff's Claims

Mr. Thomas asserts that the defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution. His First Amendment claim derives from the defendants' alleged refusal to grant him a religious accommodation which would have allowed him to refrain from any prison work from sunset on Fridays to sunset on Saturdays. His Fourteenth Amendment claims include an alleged violation of his right to be free from unlawful assault. Because Mr. Thomas is incarcerated as a result of a state-court criminal conviction, the Court construes plaintiff's excessive use of force claim as arising from the Eighth Amendment's prohibition against cruel and unusual punishment. See Gregg v. Ohio Dept. of Youth Services, 661 F.Supp.2d 842, 854 (S.D. Ohio 2009)(inmate's post-conviction excessive force claim must be raised exclusively under cruel and unusual punishment clause). Of course, that prohibition is applicable to state officials by virtue of its incorporation into the Due Process Clause of the Fourteenth Amendment. In addition, Mr. Thomas asserts a claim under the Due Process Clause of the Fourteenth Amendment based on the allegedly false conduct report which led to his placement in administrative segregation.

The Court has determined that the complaint filed in this case contains no factual allegations which would support a finding of conspiracy under either §1983 or §1985. There is no mention of any meeting of the minds or any overt actions undertaken by the defendants in furtherance of a conspiracy.

Moreover, while Mr. Thomas alleged that he is a member of a protected class (he is African American), he did not plead any racial animus on the part of the defendants.

### B. Defendants' Summary Judgment Motion

The defendants advance several arguments in favor of summary judgment.  First, they contend that Mr. Thomas failed to exhaust his administrative remedies before filing this civil rights action.  Second, they argue that there is no evidence that Mr. Shoemaker and Officer Good used excessive force.  Third, they point out that defendants Croft, Collins, Knab, Free, and Smith cannot be held vicariously liable in a §1983 action for the conduct of Mr. Shoemaker and Officer Good under a theory of respondeat superior.  Fourth, they contend that defendants Croft and Free correctly determined that Mr. Thomas was not permitted to grieve what he regarded as a false conduct report except within the context of his appeal of the decision of the Rules Infractions Board.  They further contend that, in any event, Mr. Thomas does not have a constitutional right to an effective grievance procedure.  Lastly, the defendants maintain that they are entitled to qualified immunity.

### C. Discussion

#### i. Free Exercise Claim

It is clear that prisoners, simply because of their confinement, are not thereby deprived of the right to follow the teachings of, and engage in the practices of, a religion in which the inmate sincerely believes.  See e.g., Bell v. Wolfish, 441 U.S. 520 (1979); Cruz v. Beto, 405 U.S. 319 (1972).  At the same time, however, an inmate's right to practice his or her chosen religion is not as unfettered as that of non-incarcerated members of society.  Rather, as with other constitutional rights enjoyed by inmates, the right to religious freedom must be balanced against, and at times made subservient to, the legitimate

-6-

interests of penological safety, order, and the corrections process.

In order to demonstrate a violation of the constitutional right to religious freedom in the prison setting, a plaintiff must prove the following.  First, the plaintiff must show that the religion in question is, in fact, a religion.  If it is a non-traditional religion, the inmate must show that it "occupies a place in the lives of its members 'parallel to that filled by the orthodox belief in God' in religions more widely accepted in the United States."  Dettmer v. Landon, 799 F.2d 929, 931 (4th Cir. 1986), cert. denied, 483 U.S. 1007 (1987).  Several sub-issues are involved in making that determination, including whether the doctrines of the religion relate to a spiritual aspect of life, whether the religion adheres to belief in a supreme being, whether it has ceremonial worship practices, and whether it has been practiced or recognized for a significant period of time.  Id.  The plaintiff must also demonstrate a sincere belief in the tenets of the questioned religion.

If a plaintiff can demonstrate a sincere belief in a recognized or legitimate religion, his right to practice that religion should be accommodated unless it interferes in some fashion with the need for internal order and discipline which is essential to the prison setting.  Thus, the proper test to be applied to whether an institutional denial of the right to engage in certain religious practices or ceremonies is an appropriate restriction on an inmate's First Amendment rights is as follows: whether the restriction is logically related to a legitimate interest in security, whether the inmate is provided with alternative means of exercising his right to pursue the religion in question, the impact of any accommodations of the practice on other inmates, prison personnel, or the allocation of prison resources, and the existence of ready alternatives to the

challenged regulation or prohibition.  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342 (1987); <u>Turner v. Safley</u>, 482 U.S. 78 (1987).

There is no dispute Mr. Thomas is a Seventh Day Adventist and practiced that faith prior to his incarceration.  <u>See</u> Response to Request for Religious Accommodation attached to Complaint (p. 26).  The evidentiary materials submitted by Mr. Thomas establish that in 1986 the Chillicothe Correctional Institution, pursuant to an apparent consent decree, implemented certain policies and procedures pertaining to the practice of the Seventh Day Adventist faith.  These policies and procedures, <u>inter</u> <u>alia</u>, stipulated that, except in situations of emergency, inmates who are members of the Seventh Day Adventist religion would be relieved of their institutional duties from sunset Friday until sunset Saturday.

The sole factual basis for Mr. Thomas's free exercise claim is Mr. Shoemaker's refusal to relieve Mr. Thomas of his obligation to work on the evening of November 27, 2009, which was a Friday.  Mr. Thomas had filed a request with Chaplain Freeman in early November 2009, that he not be required to work during the times observed as the Sabbath by adherents of the Seventh Day Adventist faith.  Chaplain Freeman had recommended on November 12, 2007, that this request for religious accommodation be approved.  This recommendation should have been forwarded to Norman O. Robinson, the Deputy Warden for Special Services at CCI.  The deputy warden's office, however, has no record of having received the recommendation.  Consequently, no final action was taken on Mr. Thomas's request.

When Mr. Thomas went to Mr. Shoemaker's office on the morning of November 27, 2009, he was not able to provide any proof that his request for religious accommodation had been granted.  Mr. Shoemaker tried to contact Chaplain Freeman, but

was unable to reach him.  While Mr. Shoemaker had previous experience with Seventh Day Adventist inmates requesting Saturdays off, he had never encountered a situation where an inmate of that faith had requested a Friday accommodation.

   Mr. Thomas maintains that Mr. Shoemaker had actual documents stating that plaintiff held a First Amendment right to practice his Seventh Day Adventist faith.  It apparently is Mr. Thomas's position that Mr. Shoemaker's knowledge of these documents shows that he deliberately infringed upon plaintiff's right of free exercise when he refused the requested accommodation.  The documents to which Mr. Thomas seems to refer include his religious services intake form indicating that he is a Seventh Day Adventist, his request for religious accommodation, the response to his request containing Chaplain Freeman's recommendation, and various documents evidencing CCI's compliance with a 1986 consent decree.

   The documents are clearly sufficient to create a genuine issue as to whether Mr. Shoemaker knew Mr. Thomas was a Seventh Day Adventist.  There is nothing in the record to suggest, however, that a religious accommodation is automatically granted by ODRC on the basis of an inmate's stated affiliation alone. See Damron v. Simms, 2010 WL 4809110 at *2 (S.D. Ohio Nov. 17, 2010) (granting of one inmate's request for religious accommodation does not compel legal conclusion that prison is obligated to grant inmates who claim same affiliation every religious accommodation they request).  The Response to Request for Religious Accommodation form itself indicates that after the chaplain has made his or her recommendation, the request goes before an accommodation review committee for an additional response, and then to the warden for a final decision.  The form Mr. Thomas presented to Mr. Shoemaker on the morning of November 27, 2009, would have shown that the spaces for both the

committee's response and the warden's decision were still blank.

Faced with an incomplete form, Mr. Shoemaker responded by trying to contact Chaplain Freeman to ascertain the status of plaintiff's request for a religious accommodation.  Mr. Thomas argues that at the time Mr. Shoemaker made his call, it was likely that the majority of the prison staff except for correctional officers would not yet have reported to work.  It can hardly be said, however, that Mr. Shoemaker chose this particular time to call in order to thwart Mr. Thomas's attempt to be excused from work that evening.  It was Mr. Thomas who determined the timing of the call by going to Mr. Shoemaker's office early that morning rather than at another time when Chaplain Freeman could reasonably be expected to be present.

To prevail on his free exercise claim, Mr. Thomas must show that Mr. Shoemaker deprived him of his First Amendment right to practice his religion.  Colvin v. Caruso, 605 F.3d 282, 290 (6th Cir. 2010).  Mr. Shoemaker, as a state employee, is generally shielded from damages if "his conduct [did] not violate clearly established constitutional or statutory rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Ordinarily, the Court must undertake a three-step analysis in determining whether qualified immunity applies.  First, the Court should identify the specific constitutional right that the defendant or defendants allegedly violated.  Second, the Court should determine whether, viewing the facts most favorably to the plaintiff, a violation of that right has been established.  Finally, the Court should decide whether a reasonable state official would have known, at the time the action occurred and in light of the "clearly established law," that the plaintiff's constitutional rights had been violated.  If so, qualified immunity is unavailable.  See Dickerson v. McClellan, 101 F.3d

1151, 1157 (6th Cir. 1996).

This Court has discretion to determine which of the prongs of the qualified immunity analysis should be addressed first in view of the particular circumstances of a given case. Pearson v. Callahan, 555 U.S. 223 (2009). If the Court concludes that a state employee in Mr. Shoemaker's position would reasonably believe that his actions did not abridge Mr. Thomas's constitutional rights, whether a violation of the Free Exercise Clause actually occurred need not be decided. Colvin, 605 F.3d at 290.

Apart from Mr. Shoemaker's awareness of documents showing that Mr. Thomas was a Seventh Day Adventist and had requested a religious accommodation to be relieved of all institutional duties on the Sabbath, Mr. Thomas has not pointed to any evidence that Mr. Shoemaker acted unreasonably in denying his request to be excused from work on the evening of November 27, 2009. Mr. Shoemaker had no responsibility for granting requests for religious accommodations, and at the time Mr. Thomas came to his office, that request had not yet been fully processed. Thus, it would not have been clear to an employee in Mr. Shoemaker's position that ordering Mr. Thomas to report to work Friday evening would be unlawful. See Snyder v. Trudell, 2009 WL 37183 at *10 (E.D. Mich. Jan. 6, 2009)(absent documentation of plaintiff's religious right to refuse work, it would not have been clear to a reasonable corrections officer that issuing a misconduct ticket for such refusal would be unlawful). Accordingly, Mr. Shoemaker is entitled to qualified immunity on plaintiff's free exercise claim.

The defendants are also entitled to summary judgment on any claim that they violated Mr. Thomas's constitutional rights by either requiring him to go through the prescribed process of obtaining a religious accommodation or by failing to forward his

request to the proper prison officials.  Mr. Thomas has not challenged the policy of the ODRC (72-REG-02) which sets forth the procedures that must be followed by an inmate seeking a religious accommodation.  In Miller v. Wilkinson, 2010 WL 3909119 (Sept. 30, 2010), Judge Sargus rejected various constitutional challenges to this policy, and there is no reason to believe that Mr. Thomas could successfully attack the policy as applied to him.  The apparent mishandling of plaintiff's request also is not actionable under §1983.  There is nothing in the record to suggest that the failure to forward Chaplain Freeman's recommendation to the deputy warden was intentional.  Allegations of negligence on the part of public officials are generally insufficient to state a claim under §1983.  Daniels v. Williams, 474 U.S. 327, 330 (1986).  The Fourth Circuit Court of Appeals has specifically held that negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause, Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006), and that an inadvertent mis-routing of a request form does not infringe upon a prisoner's right of access to the courts. Pink v. Lester, 52 F.3d 73, 76 (4th Cir. 1995).  See also Love v. New Jersey Dept. of Correction, 2011 WL 345964 at *16 (D. N.J. Jan. 31, 2011) (prison officials not liable under §1983 for single act of mis-forwarding plaintiff's application for re-clearance to wrong department).  The legal reasoning in those decisions dictates the same result here.

    Lastly, Mr. Thomas argues that the defendants violated the terms of the 1986 consent decree entered in Wise v. Engle, Case No. C-2-81-1387.  Mr. Thomas apparently believes that the terms of that decree automatically granted work exemptions to all Seventh Day Adventist prisoners at CCI.  The defendants maintain that this consent decree has long since been supplanted by ODRC Policy 72-REG-02.  In any event, a separate action under §1983 is

not the proper vehicle to address a violation of a consent decree. Eberle v. Wilkinson, 2010 WL 4105543 at *2 (S.D. Ohio Oct. 18, 2010 (citing Green v. McKaskle, 788 F.2d 1116 (5th Cir. 1986)). To the extent Mr. Thomas' claim is based on the alleged violation of a consent decree, that claim is without merit. Id.

### ii. Excessive Force Claim

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

Hudson v. McMillian, 503 U.S. 1, 7 (1992). The maintenance or restoration of discipline at a correctional facility may require that prisoners be subjected to physical contact that at common law might constitute assault. Combs v. Wilkinson, 315 F.3d 548, 556 (6th Cir. 2002). The unnecessary and wanton infliction of pain upon an inmate, however, violates the Eighth Amendment. Id. To determine whether the use of force was wanton and unnecessary, courts should consider the extent of the injury, as well as the need to apply force, the amount of force used, the relationship between the need for force and the amount used, the threat as perceived by the officer, and any attempts to moderate the severity of the response to such threat. Hudson, 503 U.S. at 7; Combs, 315 F.3d at 556-57.

Mr. Thomas maintains that he complied when Mr. Shoemaker ordered him to get up against the wall. He further states that once he placed both of his arms against the wall, Officer Good grabbed his right arm from the wall and put it against his back. Mr. Thomas says that Officer Good then grabbed the back of his neck and slammed him to the floor face and chest first. According to the complaint, Officer Good next put his knee into the back of plaintiff's neck while Mr. Thomas lay motionless on

-13-

the floor.  Officer Good allegedly asked Mr. Thomas at this point "Are you going to give me your hands?"  In response, Mr. Thomas states that he managed to get his arms and hands behind his back while Officer Good handcuffed him.

If Mr. Thomas had tendered any evidence supporting this version of events, he might well have established a genuine issue of material fact as to whether Officer Good and Mr. Shoemaker used excessive force.  Instead of supporting his assertions of fact with affidavits and declarations as contemplated by Fed. R. Civ. P. 56(e), however, he relies on the allegations of his complaint, which is something he cannot do if his claim is to survive summary judgment.

On the other hand, the defendants have submitted declarations from Mr. Shoemaker, Officer Good, and James Wilson, another corrections officer who witnessed the events that occurred on the morning of November 27, 2009.  Each of these declarations attests to the facts that Mr. Thomas physically resisted Mr. Shoemaker's order to get up against the wall and to be handcuffed and that neither Mr. Shoemaker nor Officer Good used an inappropriate amount of force in bringing him under control.  The defendants also tendered a Use of Force Committee Report, authenticated by a member of that committee, which concluded the level and degree of force was appropriate under the circumstances.  Lastly, the defendants submitted an declaration from Amy Weiss, the health care administrator at the Lebanon Correctional Institution where Mr. Thomas is currently incarcerated.  As part of her duties, she maintains the medical file for each prisoner at that facility.  According to her, Mr. Thomas's file shows that the only observable injuries he suffered on November 27, 2009, were redness on his right shoulder and swelling under his right eye.  Ice was applied to reduce the swelling under the eye, and no further treatment was required.

Based on the evidence submitted by the parties, it is an undisputed fact that Mr. Shoemaker and Officer Good perceived the need to bring plaintiff under control.  Given the limited nature of the force used, there is nothing in the record to suggest that these defendants acted maliciously and sadistically to cause harm.  Rather, the only reasonable inference that can be drawn from the circumstances is that Mr. Shoemaker and Officer Good applied force to Mr. Thomas in a good-faith effort to restore discipline.  Defendants Shoemaker and Good are therefore entitled to judgment as a matter of law on the excessive force claim.

> iii. <u>Claims Against Defendants Croft, Collins, Knab, Free, and Smith</u>

The defendants contend that Chief Inspector Croft, former Director Collins, Warden Knab, Inspector Free, and Lieutenant Smith cannot be held vicariously liable under §1983 for the actions of Mr. Shoemaker and Officer Good.  This is a correct statement of the law.

Allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of <u>respondeat superior</u>, are necessary in order to hold an individual defendant liable under §1983.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).  Although there are other legal claims that can properly be asserted against a supervisor simply because someone under his or her supervision may have committed a legal wrong, liability for constitutional deprivations under 42 U.S.C. §1983 cannot rest on such a claim.  Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted.  <u>See also</u> <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984).  This rule holds true

even if the supervisor has actual knowledge of the constitutional violation as long as the supervisor did not actually participate in or encourage the wrongful behavior.  See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under §1983 for failing to respond to grievances which alert them of unconstitutional actions); see also Stewart v. Taft, 235 F.Supp.2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under §1983 cannot attach where the allegation of liability is based upon a mere failure to act").

Mr. Thomas has alleged that defendants Smith, Knab, Free, Collins, and Croft engaged in a conspiracy under 42 U.S.C. §§1983 and 1985 to deny him his rights under the Free Exercise Clause, as well as his right to due process of law.  In addition, he claims that Warden Knab and former Director Collins are individually liable for their refusal to reverse the decision of the Rules Infraction Board which found plaintiff guilty of violating rules 8 and 21 and sentenced him to 15 days of administrative segregation.  Similarly, Mr. Thomas's individual claim against Lieutenant Smith appears to be based solely on her position of chairperson of the RIB.  Lastly, plaintiff's claims against Inspector Free and Chief Inspector Croft derive from their alleged refusal to process his grievances.  The Court will first turn to the conspiracy claims.

It has been uniformly held that in order to state a claim of conspiracy under 42 U.S.C. §1983, the pleading which sets forth that claim must do so in specific fashion.  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under §1983."  Guiterrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987).  The complaint in question must "allege specific facts showing agreement and concerted actions among the defendants...."

Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The failure to allege all elements of a conspiracy, including an agreement or a meeting of the minds among the alleged conspirators, and overt actions in furtherance of the conspiracy, requires dismissal of the complaint. Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989); Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988); McGillicuddy v. Clements, 746 F.2d 76, 77 (1st Cir. 1984).

Conspiracy claims under §1985 must be pled with the same specificity as conspiracy claims under §1983. Jaco v. Bloechle, 739 F.2d 239, 245 (6th Cir. 1984); Alsup v. International Union of Bricklayers and Allied Craftsman, 679 F.Supp. 716 (N.D. Ohio 1987). Further, even if a conspiracy had properly been pled, not every conspiracy to deprive someone of his or her constitutional rights is actionable under §1985. Rather, the deprivation must be motivated by some class-based discriminatory animus. United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott, 463 U.S. 825 (1983); Griffin v. Breckenridge, 403 U.S. 88 (1971). Section 1985 is available only to those "classes of insular minorities that were intended to receive special protection under the Equal Protection Clause of the Constitution...." Averitt v. Cloon, 796 F.2d 195, 198 (6th Cir. 1986). The failure to allege membership in a protected class, and discrimination based upon such class membership, requires dismissal of any claim under §1985(3). See also Macko v. Byron, 641 F.2d 447 (6th Cir. 1981); Smith v. Martin, 542 F.2d 688 (6th Cir. 1976), cert. denied, 431 U.S. 905 (1977); Eaton v. City of Solon, 598 F.Supp. 1505, 1514 (N.D. Ohio 1984).

The Court determines that the complaint filed in this case contains no factual allegations which would support a finding of conspiracy under either §1983 or §1985. There is no mention of any meeting of the minds or any overt actions undertaken by the

defendants in furtherance of a conspiracy.  Warden Knab was not even the individual responsible for granting Mr. Thomas a religious accommodation.  Moreover, while Mr. Thomas alleged that he is a member of a protected class (he is African American), he did not plead any racial animus on the part of the defendants.

Warden Knab, Director Collins, and Lieutenant Smith are entitled to qualified immunity as prison officials serving either the function of reviewing the decision of an adjudicatory committee on appeal, Turner v. Scroggy, 831 F.2d 135, 138 (6th Cir. 1987), or as a member of that adjudicatory committee.  Cleavinger v. Saxner, 474 U.S. 193 (1985).  Accordingly, so long as these defendants held an objectively reasonable belief that they were not violating Mr. Thomas's due process rights, they are immune from damages.  The Supreme Court has held that the requirements of due process are met in this context if some evidence exists in the record to support the decision of the prison disciplinary board.  Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 455 (1985).  Because there was some evidence in the record before the RIB to support its finding that Mr. Thomas threatened bodily harm to another and disobeyed a direct order, the requirements of due process were satisfied.  Defendants Knab, Collins, and Smith are therefore immune from any damages for their role in that adjudicatory proceeding.

The Court also concludes that Inspector Free and Chief Inspector Croft are entitled to summary judgment on plaintiff's due process claims.  Prison officials are not liable under §1983 for denying or failing to act on grievances.  Bailey v. Golloday, 2011 WL 1642251 at *2 (6th Cir. May 3, 2011)(per curiam)(citing Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008).

IV.  Recommended Disposition and Order

Based on the foregoing, it is recommended that the

defendants' motion for summary judgment (#62) be granted.

## V. Procedure on Objections

If any party objects to the Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge